UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

AARON NICHOLAS HERNANDEZ,

        Petitioner,

v.

RANDEE REWERTS,

        Respondent.

_____/

Case No. 1:18-cv-690

Honorable Paul L. Maloney

## **OPINION**

      This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

I. **Factual allegations**

Petitioner Aaron Nicholas Hernandez is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. Petitioner pleaded guilty in the Wayne County Circuit Court to first-degree home invasion, Mich. Comp. Laws § 750.110a(2), and assault with intent to commit great bodily harm less than murder, Mich. Comp. Laws § 750.84. In exchange for his guilty plea to the two offenses, the prosecution dismissed charges of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, and assault with intent to commit sexual penetration, Mich. Comp. Laws § 750.520g(1). (*See Hernandez v. Tribley*, No. 2:14-cv-12206 (E.D. Mich.) (Criminal Docket Sheet, ECF No. 13-1, PageID.204).) On August 6, 2008, the court sentenced Petitioner to respective prison terms of 6 to 20 years and 1 to 10 years.

Petitioner's convictions arose out of his forcibly entering the home of his former girlfriend, who was also the mother of his three children. According to the written evaluation of a mental health evaluator in 2013, which Petitioner attaches to his habeas petition, Petitioner had threatened to kill the victim earlier in the day, after she had been awarded sole custody over their children. After breaking in to her home,

> Mr. Hernandez "grabbed her by the hair and started beating her about the head and face as he dragged her down the hallway." He dragged her to the living room and kitchen area while continuing to beat her. He dragged her into the bathroom by the hair, and told her "No one will ever get your pus*y again and no one will have you and your pus*y belongs to me[."] He then threw her to the floor, ripped off her pajama and underwear bottoms, and tried to force his fingers into her vagina. He was straddling her and beating her in the face. When she told him she thought she saw police lights he got off of her. He again punched her in the face after reading "I love Josh" on the victim[']s cell phone.

(10/18/2013 Mental Health Report, ECF No. 1-1, PageID.27 (quoting Presentence Investigation Report (PSIR, 2:14-cv-21) (W.D. Mich.), PageID.97).)

Petitioner does not challenge his convictions or his sentences. Instead, he complains that the Michigan Parole Board (MPB) improperly concluded that his history involved a sexual offense and determined that he posed a risk of sexually reoffending, despite the fact that the sexual assault offenses had been dismissed. The parole board asked Petitioner to complete a sexual offender treatment program (SOP), to improve his consideration for parole. Petitioner consistently has denied a history of a sexual offense, refuses to admit any such past conduct, and refuses to participate in the SOP. He contends that he has never been convicted of such an offense, so the MPB is wrong to consider him to have such a history.

According to the attachments to the petition, the MPB has denied Petitioner parole on multiple occasions, most recently on November 8, 2017, the parole decision he challenges in this case.[1] The MPB denied reconsideration on January 3, 2018. The MPB based its most recent denial on numerous factors involving the crime and Petitioner's history and performance. The MPB indicated that departure would be warranted based on Petitioner's serious anger, his lack of honesty about suing the victim of his crimes, and his continued risk to society. Petitioner contends that the MPB misrepresented his statement concerning the victim. He contends that the parole board specifically asked if he had sued the victim in the last year, and he properly gave a negative response, because he had sued the victim in 2015 for defamation, based on statements the victim made in court when requesting a name change for her children.

---

[1] The Court notes that Petitioner filed a prior habeas corpus petition in this Court challenging the November 22, 2013, decision of the MPB to deny him parole. *Hernandez v. Mich. Parole Bd. et al.*, No. 2:14-cv-21 (W.D. Mich.). In that case, he contended that the MPB was barred from considering his refusal to admit his sexually assaultive conduct during the commission of the crimes of which he was convicted, because his guilty plea was entered in exchange for the dismissal of the criminal sexual conduct charge and because he invoked his Fifth Amendment right with respect to that charge. Petitioner challenged the MPB's reliance on his refusal to admit guilt as a violation of his right against self-incrimination under the Fifth Amendment, and as a violation of his rights under the First Amendment. *Id.* (Pet., ECF No. 1.) In a memorandum opinion and order issued on May 3, 2016, the court rejected both grounds and denied the petition. (2:14-cv-21, ECF No. 18, PageID.195-201.) Petitioner does not raise either claim with respect to the 2017 denial of parole, which he challenges in in the instant case.

Petitioner did not appeal his parole denial to the Michigan circuit and appellate courts, as state law no longer permits appeals of parole denials. *See* Mich. Comp. Laws § 791.234(11); Mich. Ct. R. 7.103(B)(5). Petitioner therefore has fully exhausted his available state-court remedies.

On June 19, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on June 19, 2018. (Pet., ECF No. 1, PageID.8.)

The petition raises two grounds for relief, as follows:

I. THE PAROLE BOARD VIOLATED HERNANDEZ'S FIRST AND FOURTEENTH AMENDMENT RIGHTS BY PUNISHING HIM FOR ACCESSING THE COURTS ON A CIVIL MATTER.

II. HERNANDEZ WAS IMPROPERLY LABELED BY THE MDOC AS A SEX OFFENDER.

(Pet., ECF No. 1, PageID.6, 7.)

## II. AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted)

### III. Analysis

Petitioner contends that the MPB violated his First and Fourteenth Amendment rights when it punished him for accessing the courts to sue the victim of his offenses of conviction. Petitioner contends that he had a right to sue the victim for defamatory statements made in her petition to change the last name of the three children who bore Petitioner's last name. Petitioner also contends that the MDOC and the MPB violated his right to due process by labeling him a sex offender and requiring him to participate sex-offender treatment.

#### A. Due Process

To the extent that Petitioner claims that the MPB violated his procedural and substantive due process rights, Petitioner fails to state a meritorious federal claim.

##### 1. procedural due process

To establish a procedural due process violation, a Petitioner must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Petitioner fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373

(1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Petitioner has served his 20-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Petitioner for parole, therefore, implicates no federal right. In the absence of a liberty interest, Petitioner fails to state a claim for a violation of his procedural due process rights.

Petitioner's allegation that the MPB relied on false information (both that he has a history of sexual assault and that he falsely denied suing the victim recently) to deny his parole also fails to state a claim. Because Petitioner has no liberty interest in being paroled, he cannot

6

show that the false information was relied upon to a constitutionally-significant degree. *See Caldwell v. McNutt*, No. 04-2335, 2006 WL 45275, at *1 (6th Cir. Jan. 10, 2006) ("[E]ven if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution."); *Echlin v. Boland*, No. 03-2309, 2004 WL 2203550, at *2 (6th Cir. Sept. 17, 2004) (prisoner could not bring a § 1983 action to challenge the information considered by the parole board because he has no liberty interest in parole); *see also Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999) (in order for the Due Process Clause to be implicated, false information in a prisoner's file must be relied on to a constitutionally significant degree); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation). Therefore, Petitioner fails to state a claim for a violation of his due process rights arising from the denial of his parole.

2. substantive due process

Petitioner appears to raise two substantive due process claims. First, he suggests that he was denied substantive due process by the MPB's apparent reliance on the idea that Petitioner is a sex offender. Second, Petitioner contends that he was deprived of substantive due process when the MPB retaliated against him for bringing a lawsuit against his victim.

To the extent that Petitioner presents a substantive due process claim based on his classification as a sex offender, his claim is without merit. Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, religion, or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not have a protected liberty interest, *see Block v. Potter*, 631 F.2d 233, 236 n.2 (3d Cir. 1980),

7

Petitioner's classification as a sex offender does not constitute such an arbitrary criterion. *See Mayrides v. Chaudhry*, 43 F. App'x 743, 746 (6th Cir. 2002) (considering substantive due process claim in context of parole). In order to demonstrate constitutionally arbitrary conduct prohibited by substantive due process, Petitioner must show that the Parole Board's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Hampton v. Hobbs,* 106 F.3d 1281, 1288 (6th Cir. 1997); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.4 (6th Cir. 1995).

Clearly, in this case, it cannot be said that the actions of the Michigan Parole Board in continuing to deny Petitioner release on parole either shock the conscience or constitute an "egregious abuse of governmental power." *Id.* Petitioner pleaded guilty to two serious offenses, and he faces a maximum prison term of 20 years. In concluding that Petitioner continues to represent a risk to society if released, the Parole Board cannot reasonably be considered to have committed an egregious abuse of governmental power.

To the extent that Petitioner argues that the MPB denied him substantive due process when it retaliated against him for filing a lawsuit, Petitioner's claim also is without merit. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (internal quotations omitted) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). In this case, the First Amendment provides an explicit textual source of constitutional protection for Plaintiff's

8

retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc) (overruling *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988), insofar as *Cale* applied a substantive due process standard to retaliation claims, and adopting a standard expressly derived from the First Amendment). Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").

For all these reasons, Petitioner has failed to establish either a procedural or a substantive due process claim arising out of his parole denial.

B. First Amendment

Petitioner contends that the MPB denied him parole in retaliation for exercising his First Amendment right to file a lawsuit against the victim of his offenses of conviction, in which he accused her of making defamatory misstatements to a family court to the effect that Petitioner is a child abuser and a child-sex-offender. Petitioner asserts that he filed a civil action in October 2015 against the victim of his offenses, in which he complained that the victim had made unprivileged statements to the effect that Petitioner had been convicted of child abuse and criminal sexual conduct and/or assault with intent to commit criminal sexual conduct and that the child or the sibling of the child was a victim of his offenses. Petitioner filed a seven-count complaint against the victim and her attorney, alleging that they had filed malicious civil proceedings, defamed him, invaded his privacy or painted him in a false light, and intentionally inflicted emotional distress, and he contended that the law firm for which the attorney worked was liable

9

under a theory of respondeat superior and because it had failed to train and supervise the attorney. According to Petitioner, the MPB impermissibly denied him parole in retaliation for his exercise of his First Amendment right to file a defamation action against the victim of his offenses.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a Petitioner must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a Petitioner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Petitioner First Amendment claim fails at the first step, because he has not alleged that was engaged in protected conduct when he filed a defamation complaint against the victim of his crime. In *Bell v. Johnson*, 308 F.3d 594 (6th Cir. 2002), the Sixth Circuit reiterated that "protected conduct, for purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims." *Id.* at 607 (citing *Thaddeus-X*, 175 F.3d at 391 (holding that protected conduct for prisoners was limited to actions taken to petition government for redress of grievances, directly paralleling the types of claims actionable as denials of access to the courts)). Petitioner's defamation lawsuit does not fall within the types of actions protected from retaliation. As a consequence, Petitioner's retaliation claim is meritless for this reason alone.

Moreover, even if Petitioner's lawsuit were protected conduct, Petitioner fails to allege sufficient facts to demonstrate that the MPB's decision was motivated by the filing of that lawsuit. *Bell v. Ohio Adult Parole Auth.*, 23 F. App'x 478, 479 (6th Cir. 2001). Petitioner has been denied parole multiple times since he was first eligible, always on a finding that the board lacked reasonable assurance that the prisoner would not become a menace to society or to the public safety. The November 8, 2017, Notice of Decision lists numerous factors supporting the board action: the seriousness and violence of the crime; the crime involved a family member; the crime involved a breaking and entering and occurred during the commission of another crime; the crime involved injury; Petitioner minimized his responsibility and showed little remorse; Petitioner's history included violent misdemeanors and felony assaultive crimes; discussion suggested that a threat to the victim continued; Petitioner had received misconducts since his last parole evaluation; Petitioner had a long history of substance abuse; and Petitioner had a history of probation/parole failure and had committed new crimes while on such status. *See* MPB Notice of Decision, ECF No. 1-1, PageID.23-25.) Petitioner focuses solely on the following statement by the parole board, which stated the substantial and compelling reasons warranting a departure from the guideline score:

> Departure is warranted; P presents as very angry, he was less than honest when asked if he sued the V recently, based on information P sent to PB, his answer is not correct, O sued V for sleepless nights & anxiety. P remains a risk at this time.

(*Id.*, PageID.23.) Petitioner suggests that the reference to the lawsuit demonstrates that the parole board had a retaliatory motive. He asserts that the parole board member who conducted the interview incorrectly determined that Petitioner was less than honest when asked if he had sued the victim recently. Petitioner claims that the question he was asked was whether he had filed suit within the last year, to which he properly answered in the negative.

11

However, the mere fact that the parole interviewer was mistaken about Petitioner's precise representation and whether it was false does not demonstrate that the interviewer based his decision on the fact that Petitioner had filed a lawsuit. Petitioner utterly fails to challenge the board's conclusion in the same sentence that Petitioner was angry. Indeed, Petitioner acknowledges that he was questioned by the MPB member about his anger and that he admitted to being angry, though he disputes the reasons for his anger.

Further, regardless of its content, the statement did not provide the basis for the parole denial. It only provided a reason why departure from the parole guidelines scoresheet would be warranted. But parole denial in the instant case did not reflect a departure from the parole guidelines scoring. Instead, the scoring of the parole guidelines themselves only placed Petitioner at an average risk of parole. *See* 10/21/16 Parole Guidelines Scoresheet, ECF No. 1-1, PageID.29-30 (showing a final parole guidelines score of -2); Mich. Dep't of Corr. Policy Directive 06.05.100, Attach. A, p. 10 (eff. Aug. 11, 2010) (providing that a final guidelines score of between -13 and +2 results in an average probability of parole). A departure from the guidelines occurs only when the MPB denies parole to a prisoner who has a high probability of parole or grants parole to a prisoner who has a low probability of parole. Mich. Dep't of Corr. Policy Directive 06.05.100 § F. No departure occurred in this case.

Finally, Petitioner presented his First Amendment claim in his motion for rehearing. The Michigan Parole Board rejected the claim on rehearing. Petitioner's allegations fail to demonstrate that the state's determination of his claim was unreasonable, either factually or legally. He therefore fails to demonstrate that the denial of his parole was based on a retaliatory motive.

In sum, Petitioner fails to show both that he was engaged in protected activity and that the MPB's denial of parole was causally connected to that activity. He therefore fails to state a retaliation claim.

**Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district

court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

The Court will enter a Judgment and Order consistent with this Opinion.


Dated:   September 12, 2018            /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       United States District Judge